The first case is U.S. v. Geddes, 22-405-3. We'll hear from Mr. Lee. Good morning, your honors. I'm Josh Lee from the Federal Public Defender's Office, and I represent the appellant Daryl Geddes. In this tax evasion case, Mr. Geddes has raised several challenges to the non-custodial components of his sentence. On Issue 1, which is his challenge to the district court's restitution order, the government has confessed error. Of what's still in dispute today, I'd like to focus... And what do we do with that? Do we remand for resentencing or what? I believe that I have asked for remand and an amended judgment. And what I think is that the court should tell the district court to strike the restitution order from, I believe it's pages 7 and 8 of the written judgment, which is the criminal monetary penalties component, and then order the district judge to revise Special Condition 9, which is the one that purports to require him to pay restitution outside of the supervised release term. And does the government agree with all of those provisions? The government does not agree that it has to be stricken from pages 7 and 8 of the judgment. I'm not sure that they would oppose that, but they haven't explicitly agreed to that. What they do agree to is that the district clear that Mr. Geddes' restitution obligation applies only during his term of supervised release. So they agree on the broad point. Thank you. So that's issue one. Issue two is Mr. Geddes' claim that 16 conditions of supervised release that were not imposed at the sentencing hearing should be stricken from the written judgment as a clerical error. So when the district court imposed Mr. Geddes' sentence, it told him the conditions of supervised release that he'd be subject to. There were 10 of them. The district court never suggested that any other conditions of supervised release would govern his term of supervised release. Well, two of those were mandatory, were they not? That's right. However, to say that a sentence is required is not the same thing as saying that it was imposed. Was it appended to the pre-sentence report, which was furnished to the defendant in his term? So it was. However, neither the pre-sentence report nor the written judgment after the fact comply with the requirement that the district court has to impose sentence in the defendant's presence. And this is set forth in a lot of this court's case law. The most important one is Viano. And what Viano says is the defendant's sentence is what the judge says orally in the defendant's presence. The written judgment is not the sentence. And of course, the PSR is not the sentence either. What Viano further says is that absent an ambiguity in what the district court said, the sentence as orally pronounced shall not be altered. Does it though bear on the two mandatory conditions that it was in the PSR and the defendant had an, if he had an objection, he had an obligation to object. And then when it, let's say under Viano, that there was a clerical error by failing to orally impose those two conditions in paragraph 102, isn't it an appropriate use of rule 36 to say, okay, well, I'm a clerical adjustment to my, the error that I made in open court and include those in judgment? I don't think so. You know, I don't think so because the fact that the defendant, so two responses. The fact the defendant is on notice that these conditions might be imposed does not mean that they were imposed. And the fact that he could have objected to the PSR does not mean that he could have objected to the fact that the district court altered the sentence through the written judgment. I don't think that you can alter the sentence as orally imposed through rule 36. Would, could he have raised any objection that would have carried any weight since they are mandatory? I think it's possible that he might have, but that's not, that's not relevant because the error arose when the district court issued its written judgment in conflict with the oral pronouncement. So let me give you. We're here on plain error, are we not? No, we are not on plain error. Anything at all? He didn't have an opportunity to object to the clerical error that the district court made. So if you look at that, he did have an opportunity to object to paragraph 102, the mandatory conditions, because those were in the PSR. He had an opportunity to raise a substantive objection to the mandatory conditions, but he's not raising a substantive objection. What he didn't, so if you look at the Fourth Circuit's opinion in Rogers, what they say is the error didn't occur at the sentencing hearing. There's no reason for him to object at the sentencing hearing. The error occurs only after the fact when the district court issues a written judgment in conflict with its oral sentence. What is the effect on the client of not having known about the mandatory non-waivable objections? Does it impact his sentence? So what this court has said, and I think one of the cases that I quoted in my brief, Songer, is really important because what they have said is the reason that we require oral pronouncement and the defendant's presence at sentencing is respect for the dignity of the individual. So essentially, when you increase the defendant's sentence behind closed doors, that violates his dignity as an individual. On plain error, you've got to show that there's going to be some effect as a result, and on the mandatory conditions that he could not have not imposed, I don't see where there's any harm to the defendant. So there's not plain error review, and to hold that this is on plain error review would create a circuit split with the Fourth and Fifth Circuits. Do you say this is not on plain error? Not on plain error review, definitely not. The government says that it is, but they're not right, and if you accept the government's position, it would create a circuit split. And the reason is because Mr. Geddes did not have an objection to what happened at the sentencing hearing. The district court pronounced 10 supervised release conditions. It could have pronounced 26, but it didn't. It would make no sense for Mr. Geddes to stand up and say, wait a second, make my sentence harsher. What should have happened is the government should have objected. So what the district court says to Mr. Geddes in his presence is what the sentence is. If the government thought, wait a second, there's an error, you're supposed to impose additional conditions, it should have objected. If the government is saying, wait, we need these standard conditions in order to supervise him correctly, it should have objected, and it didn't. So the government is at fault for not objecting. I think also about these mandatory conditions. I think that the Supreme Court's decision in this case. And what happened in Green law is the district court failed to impose a mandatory sentence. It imposed a sentence below the mandatory minimum. That sentence was illegal, but the government did not object and did not appeal. Nevertheless, on appeal, the court of appeal said, well, we've got to change this. It's like you said, it's like a clerical error because it violates the law. So we're going to put it at the mandatory minimum. The Supreme Court said, no, you cannot do that. If the government didn't object and didn't appeal, even if the sentence is illegal, you can't correct it without going through the procedural requirements. And the fact of the matter is the district court said, government, is there anything else? Is there anything else I need to do? And the government said, no, it didn't object and it didn't cross appeal. So the sentence as imposed shall not be altered. Well, didn't the district court also, as part of his routine, indicate that the defendant shall comply with the standard conditions of supervision as adopted by the court? And if his defense counsel just sat there, why isn't that plain error? I'm glad you brought that up. This is crucial. The district court did not say that. The district court in Mr. Geddes' presence never said, you will comply with the mandatory conditions as adopted by this court. Now, I want to say, I went back just because I was interested and thought, what's the practice of the district courts with respect to this? And I reviewed three or four transcripts from each district. And in every single transcript that I reviewed from all of the districts across the circuit, they say, you will comply with the standard and mandatory conditions. But that didn't happen here. And that's what makes this case different. And that's all you would say is required here. If we would establish some type of rule by this opinion, that is all that would be required. It's just that reference. There's a list. That's right. Yes. That's right. I'm not going to, on the open record, go through each of the conditions with you. That's exactly right. So, you know, the most And what they say is, what the judge needs to do is to have a written list and confirm with the defendant that he's reviewed the written list and then say, I am adopting those conditions as set forth in that document. I think there's an argument that even just saying without reference to a document, I'm imposing the standard and mandatory conditions. Even without referring to a document, that might be enough because the defendant can then object and clarify. That didn't happen here. There was no reason for him to object and no reason for him to clarify because he did not object to only imposing the 10 conditions that were imposed. You know, something else I think that is important is the government says, well, how, you know, how is the district court supposed to know that he needed to do this? Well, three things I'll say about that. Viano makes that clear, that the imposition of the sentence occurs at the sentencing hearing. 3583D makes that clear because it says these conditions have to be expressly ordered. They're not part of the sentence as a matter of law. You have to expressly order them. And the express ordering of a defendant's sentence occurs at the sentencing hearing and only at the sentencing hearing. Finally, this court's case law in Viano and it is incumbent on the district court to speak carefully at the sentencing hearing because what the district court says has legal consequences. In Barwig, further, the court said, quote, a defendant must be entitled to rely on the district court's unambiguous words. Here, the district court's words were unambiguous. Under Viano, the sentence may not be altered. And that's what happened here. The district court altered the sentence and so the court should strike the condition. And so since we're giving special credence and importance to the oral statement at sentencing, you would require here that there be a resentencing and the district court at least refer to special conditions? Not, no, definitely not a resentencing. And the reason is because this court's case law is really clear. I've cited a bunch of them on pages 15 and 16 of my reply brief that the remedy when a written judgment is in conflict with an oral pronouncement is to order the district court to bring the written judgment into compliance with the oral pronouncement. So the most recent case I found is. So no conditions? He's got 10 conditions. But no standard conditions? No standard conditions. That would be the result? That would be the A district court can always modify the conditions of a defendant's supervised release, but before it could do that, it would have to hold a hearing, give Mr. Bindi an opportunity to be present, and allow him to make any objections that he might have. What if a judge makes a clerical mistake in the oral sentencing? Can the judge then, under Rule 36, correct that in the written judgment? Honestly, I don't know the answer to that. For example, if the judge misspeaks, I mean, isn't that rather intuitive? I don't know the answer to that, although I will say in Viano, this court said what the district court may have intended is irrelevant. All that matters is what the district court said. And so I think now I'm coming back to it. No, I think you can't correct it. And if you look at it in Viano, it's pretty obvious in Viano that the judge did misspeak, and that the judge intended to impose a different sentence. But nevertheless, the court said it. So if the judge says, I meant to say I'm sentencing you to one year, and we don't misspeak, and says I'm sentencing you to 100 years, you can't correct that in the judgment. You have to impose a 100-year sentence, even though? I think that the defense lawyer could object, and that if the defense lawyer doesn't object, it's ineffective assistance. Okay. That's how that would be corrected. Okay. Thank you, Your Honors. I'll reserve the remainder of my time. Thank you. Good morning. May it please the courts. Greg Knapp for the government. I also would like to talk about Viano, which is the principal case on which Mr. Geddes relies, and the case he's relying on to ask this court to simply strike all the standard conditions without even rehearing. And in Viano, and its progeny that Mr. Geddes cites, there was a true conflict. There was an irreconcilable conflict between the oral sentence and the written judgment. Specifically, at the sentencing hearing, the district court said eight years, total sentence. And then the written judgment said 10 years. That's a conflict. That's X versus Y. And so on those facts, yes, there was no resentencing, because it was irreconcilable. The district court must choose its words carefully. But here we don't have that. Here we have an oral pronouncement of a term of supervised release. And then we have a written judgment, which includes standard conditions, which are fully consistent with that pronouncement. Conditions such as, you will be supervised by the probation officer. You must report to the probation office. Answer truthfully the probation officer's questions. But the probation officer... So you're saying the standard conditions were referred to at sentencing. They were not referred to at sentencing. I can see that point. And isn't that important? That's just what counsel's been arguing. That is important, but Viano also makes clear that where there's an ambiguity, not a direct conflict, it is... Well, a silence, is that a silence, an ambiguity? At most, it's... You've got eight years versus 10 years. That's an ambiguity. That's a conflict, we would argue. Okay. That's why Viano ordered the remedy that it is. But here you have standard conditions listed. Right. And our position is that in order for there to be a conflict as opposed to an ambiguity, the judge would have had to have said something more that was inconsistent with including those standard conditions. For example, in the Benvey case, cited by Mr. Geddes, the judge said at sentencing, I am not going to impose the drug testing condition. But then in the judgment, it included that condition. That's a conflict, like X versus Y. Here we don't have X versus Y. We have at the sentencing hearing, the district judge saying X, Y, and Z, but then being silenced as to 1 through 14. And given those fact that those 1 through 14 are standard conditions, they are recommended by the guidelines, it's not impermissible for the district court to include those in a written judgment to clarify what it means by supervised release. And so your argument hinges on the assumption that the judge intentionally omitted those, but intended to impose those recommended conditions, even though the judge actually orally recited all of the conditions that aren't recommended, that are special conditions, but we're going to assume that the judge was just making a clerical correction, and we actually know what, if we can surmise that in the judge's head, he intended to impose those? I don't think it's a question of getting inside the judge's head. It's a question of, there is the written judgment, which includes the imposition of these conditions, and that follows from the pronouncement of supervised release. I mean, yes, it's... So what you're saying then, you could just create any kind of condition of any sort. As long as you say, and I'm imposing a period of supervised release, right? That's not what we're saying. Well, isn't it? I mean, you said that the district court said you're going to have supervised release. That's all it will say. And then you have a written judgment that lists conditions. So that written judgment, I'm saying, could be any kind of thing. Well, there's also the requirement that for certain non-standard conditions, there are additional findings. And so that's the distinction that we are drawing. The fact that for standard conditions that are... So standard conditions can be anything. You could just say... No, they can't be anything. I mean, there needs to be constructive notice or actual notice of what those are. In this case, they are the conditions that are recommended by the guidelines for all cases or adopted by the district. And that's why it's important what has been observed earlier... As long as they comply with 3583, that they're no more restrictive than otherwise reasonably necessary. I mean, we can't just ignore that. No, correct. Yes. But as has been observed, there's been no merits challenge here that these standard conditions were more restrictive than necessary. I mean, the defendant could have made that challenge. He could have said, Judge, I'm going to stand up and object. You haven't ordered me to do these things, these conditions. And you should have imposed these more restrictive conditions Why would somebody do that? I think they would have done that either in reference to the language in the precinct investigation report, which is... Which has nothing, no language about any of the standard conditions. The only reference, tell me if I'm wrong, are the two mandatory conditions in paragraph 102. Can you show me anything in the PSR that has any reference to any of the recommended conditions? In after that language about the mandatory conditions, the shall not commend other offenses, DNA testing, it said, quote, the defendant shall comply with the standard conditions of supervision as adopted by this court. And our position is that with that knowledge, combined with the constructive notice that this court recognizes for these standard conditions, that gave the defendant an opportunity to object or seek clarification, consistent with the Mateo case I had in our brief, consistent with the, there's another case that I'm, eluding me, but we cite those in our briefs. I'm sorry to take up so much of your time. I'm having trouble understanding that. I can understand saying, you should object to what the probation officer said. When the judge makes a mistake in his favor, in Mr. Geddes' favor, I don't understand why a defendant would stand up and say, judge, I object. The probation officer recommended these other conditions against me, and you forgot to impose these. I want you to impose these more, these recommended conditions because the probation officer recommended them. You know, the smart thing to do is keep your mouth shut. He was the beneficiary of the favorable mistake. And I'll agree with that as far as it goes. Our position is just that then there's no requirements that the district court actually expressly state that the standard conditions will apply. Maybe a better practice, but when the district court has, when those have been noticed, and then when they're included in the written judgment afterwards, there's no real conflict. Because after all, the base, the doctrinal basis for Mr. Geddes' claim, the relief he's seeking is that there's a conflict here pursuant Biano. And our argument is that when the conditions are standard, like there is no conflict, they follow implicitly. And I mean, another point back to the objection, yeah, it wouldn't have made any sense for a defendant to say, give me a harsher sentence. I agree with that. But as has been observed, if Mr. Geddes truly thought that there was a conflict here, that there was a clerical error, to use his language on appeal, he could have filed the Rule 36 motion. I mean, if that's what happened in Biano, in Biano where there was a true conflict, 10 years, 8 years, I mean, the blind-sided defendant filed the Rule 36 motion. Before or after the judgment? After, after. Okay. So, but I think that's, but the failure to do so here, I think it drives home the point that this entire appeal, in our view, represents an attempt to sort of bypass district court and come to this court and seek an order nullifying all the standard conditions without having ever attempted to articulate. So say, hypothetically, that the defendant's correct here, and we would do what? Correct as to the requirement of pronouncement? Correct. Then we say that, at a minimum, this court should remand for the hearing. I mean, there's no basis to simply strike up. So a total do-over as far as sentencing is concerned? Not a total do-over. I mean, we think the there needs to be at least some reference to standard conditions orally by the district judge. There should be a remand for reconsideration of the standard conditions, or I should say perhaps any non-pronounced condition. And on the restitution point, since we're doing something with the district court and trying to give some guidance? Yeah, our requested remedy is that the limited remand, that the court issue a limited remand with instructions to modify the restitution payment schedule to make clear that restitution is due only during the three-year supervised release. That is our requested remedy as to restitution. Since I have time, I'll just respond to another point that was made by Mr. Lee regarding the controls. I mean, the principle of green law was that an appellate court cannot change a judgment to the benefit of a non-appealing party. I mean, here it is Mr. Geddes who is appealing and seeking a modification of the judgment, a striking of those standard conditions. And so we don't think that green law controls. What about the risk notification condition? We haven't heard about that yet. Yes, in Hull, this court upheld the risk notification condition against a delegation of authority challenge. And Hull was a case that came before Cabral. Well, yeah, but in Hull, didn't the judge say in open court, when imposing the risk notification provision, that the risk is going to be related to your bank robberies? Correct. And so there, I think, the panel was saying, didn't they? I mean, explicitly that there was no unfettered discretion left in the probation office because the judge had specifically told the probation officer in open court what the risk notification. It wasn't broad. It was very narrowly tailored to a risk relating to something like bank robbery. Correct. And so I think that raises the question for this panel. Was that language in Hull determinative? Is that the only reason it was constitutional? Or, as the government argues, was the contrary expansive language in Cabral by the district judge determinative of that result? We argue that the language by the district judge was The district court went out of its way to say that I'm not going to try and limit it. It's up to the probation officer in the future, any number of scenarios. And the panel stated that, although we would like to interpret this condition on its face to avoid delegation problems, we just can't do that based on what the district judge said. In our view, that was a determinative de facto in Cabral. But I would also say that even if this panel is not sure, not completely convinced, there is no dispute that with respect to the substantive challenge of standard condition 12, that plain error applies. Now, as was discussed earlier, there is some dispute as to the other challenge as to whether plain error review applies. But with respect to the Cabral issue, the parties agree it's plain error. And so given that we have a case here that factually falls between Hull and Cabral, neither case clearly controls. And so it can't be plain error. And that, I suggest, would be one disposition that the court could take with respect to the substantive challenge to standard condition 12. Is the issue ripe for review? We argue no. I was sort of getting ahead of myself to the merits in response to the question. But we feel that all of the factors that the Cabral panel recognized as making an issue not ripe are present here. For vagueness, but not for the risk. For vagueness, but not for this challenge, right? That's true. I mean, I'm speaking more generally of the general factors that the Cabral court was looking at in determining in that case that the vagueness challenge was not ripe. We think that those same factors apply here to the particular improper delegation challenge. And those factors are the lack of any factual development. We don't know if this will ever be enforced. The fact that depends on a third actor, the probation officer. The lack of any immediate harm. This court's reluctance to address any abstract disagreements with standard conditions. Weren't all of those present in exactly the same way in Cabral? Well, the Cabral panel concluded no, because based on the statements of the district judge, like, telling the probation officer, it's up to you to determine any number of future scenarios, whether this may apply. Like, we don't have that here. We have, as has been claimed. That's an argument on the merits. Well, I think there's a relation. But, I mean, to conclude otherwise would be to say that here we have just the language of standard condition 12. Right. And so to conclude that this particular challenge is ripe would be to say that any time standard condition 12 is included in the judgment, it must be ripe for a judicial challenge. And I think that would be inconsistent with Cabral. Because Cabral, something more was required in order to conclude with respect to improper delegation that it was ripe for review. But nothing really had happened yet in Cabral, right? That is the statement of sentencing. The triggering of the authority. Though, I mean, the probation officer hadn't gone out and done something as affecting, you know, that particular event. But, I mean, to paraphrase the language of the Cabral panel, like the improper delegation occurred when the district judge imposed that condition and did so without providing any direction to the probation officer. That was what we think was a triggering factor. Yes, it relates to the merits, I acknowledge. But the fact is we have the panel in Cabral concluding that it was not ripest of vagueness and ripest Cabral. And so something more had to occur in Cabral for there to be ripeness as to the improper delegation challenge. Thank you. Thank you very much. I have two very quick points. One, the government has asked for a remand for reconsideration because the written judgment conflicts with the oral pronouncement. That is totally foreclosed by this court's precedent. I think when you look at it, you'll see that the cases are at pages 15 and 16 of my reply brief. The only remedy is to strike the conditions. Second, there's no need to reach the Cabral issue because that's one of the conditions that has to be stricken as inconsistent with the oral pronouncement. Thank you. Thank you. This matter will be submitted. Very well presented by both sides. We appreciate your excellent advocacy.